20-3341 Minnesota Sarah Schmitt versus versus Kilolo Kijakazi Acting Commissioner of Social Security All right, okay now I can see Miss Stevens, I can't see Miss Green All right, now I can see Miss Green. Miss Stevens, you may proceed. We'll hear from you first. Please turn on your microphone May it please the court, my name is Peggy Stevens, and I represent the appellant Sarah Schmitt in her appeal for her denial of her Social Security benefits. Mrs. Schmitt, the appellant, was diagnosed back in 2012, January of 2012 with multiple sclerosis and at that point she had significant findings on brain MRIs and as well as cervical MRIs and thoracic Her symptoms have been fairly continuous since that time she has symptoms of disabling fatigue, spasticity, neuropathy, she has cognitive issues, intermittent eye problems, itching, sleep problems, and in addition in 2014 she had a double mastectomy, she had breast cancer and had to go through chemotherapy. There is no substantial reliable evidence set forth in the ALJ decision that supports a finding of a light RFC. The closest he comes is giving some weight to the non-examining state agency consultants who opine a light RFC. So the ALJ found unskilled light work, which means that Mrs. Schmitt would be able to stand or walk for six hours during an eight-hour day. They also found unskilled. However, with Mrs. Schmitt's neuropathy and her spasticity and the fatigue, I believe that the record supports that that that would be impossible for her to do. Now Mrs. Schmitt turned 50 years old in 2015. Therefore, according to the medical vocational guidelines, she would be found disabled if it was found that she had a sedentary RFC. Now the ALJ does not say what evidence supports the light RFC. Like I said, the closest he gives is giving some weight to the non-examining state agency consultants who opine light. Now, ordinarily speaking, according to precedent, opinions of non-examining, non-treating sources do not normally constitute substantial evidence. That would be Shantos versus Barnhart in 2003. And further, in Lauer versus Apfel, it indicates that if a doctor doesn't give any specific medical findings to support to support the RFC, that it probably is not substantial evidence. Neither Osman or Bordwell, who are the non-examining sources here, give really any explanation as to why she should have a light RFC, except that the objective evidence is not consistent with her alleged symptoms. Now the court says that that the ALJ covered it by a narrative of the evidence in this case. The narrative for the light RFC is is basically one paragraph. Part of that paragraph speaks to her cancer and the cancer therapy. There's a mention that she takes medication for neuropathy. There is no mention of fatigue. In fact, there is no mention of fatigue, which is a major which is a major disabling factor or symptom that goes along with MS. Fatigue is actually the tipping point. However, Neuropathy and spasticity are also noted throughout the record, as fatigue is mentioned throughout the record. Her need for naps. Now the the evidence in this case is basically, there's two treating physicians opinion. One was her neurologist, Dr. Beaver, right up until right up until I believe it was the end of 2016. He was a treating neurologist. He gave a statement you know stating that she had issues with fatigue, walking, stability, burning pain, spasticity, etc. And that she was not capable of low stress jobs due to difficulty with sustained attention and concentration. Now this opinion was given little weight by the ALJ because he said that it went back and forth between the past and present. But it is clear that Dr. Beaver has stated that that these symptoms of fatigue, neuropathy, spasticity have been present since 2012 when this all began. Also in the decision the ALJ mentions one MRI in 2015 where she's stable. There is quite a few MRIs in the record of both the cervical spine and and the brain. While some of the brain lesions resolved, there still remains damage and Mrs. Schmidt has continued to have these symptoms throughout that are noted that are noted in the record numerous times. Then her next, her other neurologist that took over after Dr. Beaver is Dr. Smith. Now he notes constant fatigue, numbness, spasticity, pain and that she has to shift positions due to the spasticity in her legs and that she would be absent four times a month. The ALJ says that that this evidence was after the date last insured. However in Basinger v. Heckler in 1984 it was found that evidence after the date last insured was relevant because it may bear on the severity of the condition before the date last insured. So the ALJ also gave Dr. Smith little weight. There was also a consultative examination that said that Mrs. Schmidt would have difficulty carrying out work-like tasks with reasonable pace and persistence and that she would be unable to tolerate stress in the workplace. There was quite a few third-party statements submitted in in this case. They were from Mrs. Schmidt. Ms. Stephens, could I ask a question about about your position? You've listed a lot of disagreements that you have with how the ALJ considered the evidence that's presented. But do you have sort of a lead legal argument that where you think this case went wrong in front of the ALJ? Is there some error you want us to look at? Independent or in addition to the factual recitation that you've gone through? Well, he does not He does not discuss fatigue at all in the decision and he does not Well, first of all the treating physicians should be entitled to controlling weight unless there are good reasons. Why not? So that is one point to bear. And the the treating physicians opinions are also consistent with the medical records as a whole and they are consistent also with Mrs. Schmidt's testimony. In fact, Mrs. Schmidt's testimony was not Was not even mentioned in the ALJ decision. So Also This case has Subjective symptoms, but they are very well documented in the record. And in Basinger v. Heckler in 1984 where subjective symptoms are a major factor in the case There should be a credibility determination is critical. Here there was no There was no real credibility determination. There was no mention, no analysis of the subjective symptoms. 98 96.8 P Says that they will look at all the evidence Including third-party statements, the treating physicians, all the evidence that is submitted. That is certainly not what happened in this case. And then under the listings my argument is this Dr. Butler who was a psychologist testified at the hearing. Now I objected at the hearing that she could that she could only testify as to the mental limitations and That it was really the MS listing that included The fatigue as well as the physical symptoms of MS So when the decision came out The ALJ said mm-hmm like he agreed like he agreed with the position And I think that's clear in the listing when the decision came out. He found that the psychologist actually Considered fatigue in her opinion under 12.02, which is strictly a cognitive Listing and nowhere in that listing does it mention a Anything related to it. So therefore that was error And then there was no discussion of fatigue at all under 11.09 B So it's it's unclear what he relied on in either Finding that she had a light RFC or In finding that she didn't miss that she didn't meet or equal listing 11.09 B, but it's not only the fatigue That is disabling. It's also the neuropathy and spasticity You're in your rebuttal time now, would you like to save any for rebuttal or do you want yes, it's up to you I will I'll save this time very well. You have 56 seconds remaining for a bottle Is green we'll hear from you Your owners, can you hear me? Yes, you may proceed. Okay. Thank you. I Was worried there for a minute Your honors. Good morning. My name is Linda green and I represent the commissioner in this case I want to address first some of Directly address some of the points made by Miss Stevens But at the very outset This case presents a diagnosis, but it does not present a The claimant has the diagnosis of MS and we cite in our brief footnote 8 the agency's recognition That MS can take many forms and it appears differently in Be aggressive it can also go into remission it can be almost dormant and a Diagnosis of MS Did Not prove that her MS or her neuropathy caused her to be unable to enter the workforce and Before you go Can you hear me? Yes, I can your honor. Your connection is not good and you're cutting in and out a little bit at the very beginning You said this case involves diagnosis, but not and then you cut out and since that was your lead Line, I thought I'd let you restate it. It involves diagnosis, but not what? Disability so simply providing a diagnosis of MS does not equate to a disability and The issue before the court is whether the ALJ's decision is supported by substantial evidence Substantial evidence is not a high threshold in these circumstances it means Relevant evidence that a reasonable person could accept as adequate to support a conclusion Throughout the ALJ's decision He discussed and analyzed the evidence in great detail and he cited from the record again and again and He drew reasonable inferences and conclusions and analysis from that evidence In the main Plaintiff's arguments are an attempt to get the court to reweigh the evidence in her favor and The court will of course decline that invitation Ms. Green could you address the issue of fatigue as I understand Ms. Stevens argument is that the ALJ Just didn't address it and that the expert Dr. Butler who was testifying about the mental or the cognitive limitations Expressly stated that she was not going to speak to the physical which I'm assuming they mean fatigue as well Could you address that and whether where you believe the ALJ did address the issue of fatigue? Yes, your honor throughout the Decision that fatigue is her symptom and so fatigue and Is something that has to intersect with other evidence and a person cannot simply it's like offering a diagnosis of MS a Person can't simply say I have an MS diagnosis or I have fatigue That's a symptom and symptoms must be supported by other evidence in the record Our regulations specifically prohibit the ALJ from taking a symptom at face value now throughout the ALJ's decision he considered her symptoms and specifically the ALJ found that fatigue was a part of the testifying experts Calculation when she gave her opinion When she said that she could not address the physical aspect she was referring specifically to listing 11.09. So there were two listings that were relevant to this case one was 11.09 and that has a part a that asked for a physical finding and one was 11 I'm seeing I've got bad network quality. Can you still hear me? Okay, and the other listing is a 12 point listing and it was strictly for mental impairments and So when the expert at the hearing said that she could not address the physical What she meant was she couldn't address the part a in listing 12.09 which mean which asked for Let's see that For up whether a person has a marked limit in standing from sitting balancing and using the upper extremities for finding gross movements That's what she was talking about that. She didn't have the expertise to make that physical finding but in terms of plaintiffs cognitive functioning and Fatigue would affect that She stated that That plaintiff did not meet that listing under the general for categories that are relevant to a mental health listing so she did consider fatigue in the realm of her expertise which was the mental finding in terms of fatigue generally past that The ALJ gave numerous examples and citations to the record where plaintiffs medical findings and activities in no way support a credible fatigue disability association Over and over and this also goes for spasticity Which is something claimant says is another one of her symptoms throughout the Medical record and they're just 20 or 30 citations every single examination She has an unimpaired gait She has normal neurological exams She has a normal ability to pay attention to participate in one-on-one Conversations to manage a checkbook and her finances She has a normal ability to balance and use her hands. So for instance in 2016 which is the last relevant year before the court She buys a puppy and she takes it for walks and that takes a certain amount of coordination and balance and she has a Let's see in 2012 she was walking in the zoo walking at the zoo and then in 2016 which is the end of that relevant period she is quote hiking up north unquote and these are all factors that the ALJ considered and so for instance if a person says You know, I'm legally blind But then they're flying an airplane and the ALJ noted that they're flying an airplane that is implicitly a Decision that perhaps their blindness is not quite as alleged and When the ALJ is citing over and over that she has a normal ability to walk normal cognitive abilities These are positive findings that go against all of her disabling symptoms including spasticity and fatigue in terms of her MRIs Certainly the MRIs were one piece of evidence that showed that she had a Diagnosis of MS, but her MRIs are stable throughout the relevant time And She herself has declined any treatment for MRI. She says she's it's not she's not having an Exacerbation, so she doesn't want the treatment She claims that is not well documented that she had an exacerbation in 2012 Which is near the beginning of the relevant period but then in 2014 her doctor says she's stable and in 2016 her own treating doctor Has tests that show that she's pretty much within normal limit. She can do calculations She can recall information So what she has is a diagnosis and some alleged symptoms But she doesn't prove a disability and she doesn't prove her symptoms Intersected with other supporting evidence sufficiently for them to be fully credited Now in terms of her treating physician opinions the ALJ gave supported reasons for Not accepting. I think it's Dr. Beavers and Dr. Smith's Opinions and Dr. Smith was in fact not her treating physician during the relevant time and Rather than just repeat what the ALJ said I'd like to refer the court to the ALJ's discussion of those opinions Under the case law and under the regulations He cited reasons for not accepting those For one these both these providers did wander around that their opinions are not well attached to the relevant time they're also inconsistent within themselves and they're inconsistent with the record as the ALJ points out and Again the ALJ's decision is the decision Before the court and because that decision is supported by substantial evidence The court should affirm She does not prove to a medical certainty or have a medical foundation for her alleged naps in 2012 She tells her doctor Well, I'm taking a 15-minute nap every day for and for one that's not a very long nap for two at that point Her doctor tells her stop doing that because it's interfering with your sleep at night At another point she tells her doctor. I think it's in 2013 I'm taking a 20-minute nap every day and then in 2016 She says well, I'm taking a 20 to 45 minute nap every day. There's no Correlation in the medical record that a so she has to take a nap so she's not subject to some kind of you know, almost narcoleptic need to take a nap and Furthermore she could if take those naps after her workday or before People have different work schedules, but there's no provider That says she has to take these naps and they are within and that has to be factored into her workday In terms of the state agency physicians, I want to address that because both these doctors give credible Supported reasons for their findings, which are basically a light work RFC and I know that council sites Let's see. I think it's the Turpin case but in this case these state agency physicians saw almost all the medical records for the first set of Physicians saw all the medical evidence and so we don't have a situation here where They some probative evidence came in after Their decisions they saw all the medical evidence and the ALJ found their opinions persuasive and They reviewed some of the opinions that other Medical opinions that plaintiff relies on and their medical informed opinion was that they did not show Disability or they did not show that she was as limited as she alleged and so the Standard is that the ALJ's decision has to be supported by medical evidence Not that it has to parrot a medical opinion The ALJ cited medical evidence throughout his decision for every single conclusion at step 3 at the RFC and at step 5 and Because he did This court should absolutely affirm this well-reasoned and well-supported decision. Thank you Very Well, thank you for your argument. Ms. Stevens we'll hear from you in rebuttal Just a couple of points the ALJ even under his reasoning for the For the light RFC he primarily discusses the psychological and the cognitive issues and Says hardly anything other than giving some weight to the non examining sources And then oh the unimpaired gait The gait is a manner of walking it doesn't mean that you don't have spasticity and neuropathy those are separate issues and The MRI being stable Okay, she had stable MRIs, but they're still Still lesions. There's still damage causing the symptoms And Then the last issue about daily activities if you look at the third-party statements There is a lot of qualification to daily activities Of course, she has daily activities, but it goes to how long that she that she does them So walking the puppy helps with her spasticity But you can't do it very long because the physical activity causes her to get exhausted All right, very well Thank you for your argument. Thank you to both counsel The case is submitted the court will file a decision in due course Thank you, Your Honor Counselor, excuse me